UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


**MARCELLA BYBEE**
    Plaintiff

**v.**                                                                                         **No. 1:10CV-00152-M**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Charles Richard Burchett. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 8 and 9, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on November 12, 2009, by administrative law judge (ALJ) George Jacobs. In support of his decision denying Title II and Title XVI benefits, Judge Jacobs entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

    2. The claimant has not engaged in substantial gainful activity since the amended onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

    3. In the previous hearing, it was found the claimant had severe impairments of back pain, depression and a generalized anxiety disorder with a residual functional capacity for light work exertion allowing the option to sit every 30-45 minutes if necessary, and work that was limited to simple repetitive tasks in a low stress environment without interaction with the general public. Headaches and average to low average IQ were assessed as non-severe impairments.

4. Currently and since the amended onset date of disability, May 31, 2002, the claimant has had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, headaches, depression, post traumatic stress disorder, anxiety and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

5. Since the amended onset date of disability, May 31, 2002, the claimant has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that since May 31, 2002, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) affording a sit/stand option with at least 30 minutes in a position; occasional climbing of ramps/stairs, balancing, stooping, and crouching; no climbing of ladders, ropes, and scaffolds, kneeling, or crawling; no overhead reaching; no pushing/pulling with the lower extremities; no work around hazards such as machinery and heights or work around fumes, odors, dusts, gases, poor ventilation, temperature extremes, wetness, humidity, or vibration. In addition, the claimant is limited to simple repetitive tasks involving occasional contact with co-workers and supervisors and no contact with the public.

7. Since May 31, 2002, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. On September 29, 2008, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to September 29, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills. Beginning on September 29, 2008, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, subpart P, Appendix 2).

11. Prior to September 29, 2008, the date the claimant's age category changed, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12. Beginning on September 29, 2008, the date the claimant's age category changed, considering her age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that she could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. The claimant was not disabled prior to September 29, 2008 (20 CFR 404.1520(g) and 416.920(g)), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 13-20).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2

5

of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The plaintiff was born on September 29, 1958 (AR, p. 32). Therefore, she turned 50 on September 29, 2008, which is classified as "closely approaching advanced age (age 50-54)" for purposes of the so-called medical-vocational, or grid, rules in Appendix 2 of the regulations. 20 C.F.R. §§ 404.1563(d) and 416.963(d). In his written decision, the ALJ found that, for the closed period from the plaintiff's alleged onset of disability on May 31, 2002, through September 28, 2008, the plaintiff was not disabled. The ALJ cited Grid Rule 201.25, as a framework for decisionmaking in this regard (AR, pp. 19-20). However, the ALJ found that "Beginning on [September 29, 2008], a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 201.10" (AR, p. 20). The ALJ concluded that the plaintiff "was not disabled prior to September 29, 2008, but became disabled on that date and has continued to be disabled through the date of this decision" (AR, p. 11).

6

The plaintiff's sole contention upon judicial review is that the ALJ erred in failing to find that, at all relevant times including during the closed period, she was disabled pursuant to section12.05C of the so-called listing of medical impairments in Appendix 1 of the regulations. An individual with the following medical impairment is entitled to a conclusive presumption of disability:

> *12.05 Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Therefore, putting them in an order different than the above language indicates, the following requirements must be satisfied:

1. Onset of IQ of 60 through 70 before age 22.

2. An additional, vocationally-significant impairment.

3. Deficits in adaptive functioning.

4. A valid IQ of 60 through 70.

## Requirements 1 and 2

The magistrate judge concludes that the first and second requirements above are satisfied in this case for the following reasons:

7

1. The plaintiff's school records show that on February 24, 1972, when she was 13 years old, an IQ test was administered, and the result was an IQ was 63 (AR, p. 285). Although the parties have not questioned the validity of this low IQ score, we note in passing that it is broadly consistent with the plaintiff's testimony that she believed that she repeated the second, third, and fourth grades; when she was in the fifth grade and thirteen years old, she got pregnant, quit school, and got married; and she was subsequently unable to pass her GED test (AR, pp. 49-50). It is unclear whether the plaintiff attended special education classes. In her application, the plaintiff specifically answered the question in the negative (AR, p. 279). However, she proceeded to state that she was in "special classes in reading and spelling" (AR, p. 279). At the hearing, the ALJ asked the plaintiff "How many years were you in some kind of special ed class?" to which the plaintiff responded "I don't remember. Because it seemed like I was in it every year" (AR, p. 49). The plaintiff told Dr. Cabezas that she "may have attended special education classes" (AR, p. 388).

2. The Commissioner has not alleged that the plaintiff does not suffer from an additional, vocationally-significant impairment. The ALJ found that, in addition to borderline intellectual functioning (BIF), the plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, headaches, depression, post-traumatic stress disorder, and anxiety. ALJ's Finding No. 4.

## Requirement 3

The magistrate judge concludes that the third requirement of deficits in adaptive functioning was not satisfied in this case for the following reasons. From 1984 through 1992, the plaintiff worked as a certified nursing assistant (CNA) in a nursing home (AR, pp. 36 and 244). From 1992, through 2000, she was a sewing machine operator working with seat covers for trucks

(AR, pp. 35 and 244). The evidence reflects that, for most of her adult life, the plaintiff has enjoyed a good earnings record. Her earnings in 1995, through 1999, before she finally quit working, were in excess of $15,000 per year (AR, p. 149). The vocational expert (VE) testified that the plaintiff's past relevant work as a CNA was "semi-skilled" with a specific vocational preparation (SVP) of 4, and her prior job as a sewing machine operator was medium as performed and semi-skilled with an SVP of 3 (AR, p. 56). There is no evidence that the plaintiff was ever forced to quit working due to an intellectual impairment. She testified that she quit her last job as a sewing machine operator because "I couldn't pull and tug and stand any more" (AR, p. 51).

The magistrate judge concludes that the ALJ did not err in considering the plaintiff's good earnings record, the skill level of past relevant work, earning a CNA license, and lack of evidence of cessation of work due to an intellectual impairment in determining that she does not suffer from significant deficits in adaptive functioning due to an intellectual impairment. See *Redding v. Astrue*, 2010 WL 3719248 (S.D.Ohio) (the ALJ did not err in finding that Mr. Redding's "actual level of adaptive functioning was inconsistent with the requirements of 12.05C because he had previously earned between $19,000 and $27,000 a year, including semiskilled work as a forklift operator"); *Carmack v. Barnhart*, 2005 WL 2108329 (6th Cir.) (Ms. Carmack's work history demonstrated her ability to perform complex tasks and belied her claim of mental retardation); *Daniels v. Commissioner*, 2003 WL 21774004 (6th Cir.) (no deficits of adaptive functioning where Ms. Daniels earned a cosmetology license). Because the plaintiff has failed to show that her intellectual impairment has resulted in deficits in adaptive functioning, she has failed to show that it satisfies all of the requirements of Listing 12.05C.

## Requirement 4

The fourth and final requirement of Listing 12.05C is a the presence of a valid IQ of 60 through 70. Unfortunately, although this is probably the most fundamental of all the requirements and ideally should be considered first, we have put it off until last because 1) its resolution is complicated by the equivocal findings of the professionals who actually administered and interpreted the IQ test results in this case and 2) the ALJ appears to have resolved the conflict or ambiguity primarily based upon a consideration of the plaintiff's adaptive functioning/work history (i.e., our requirement 3).

On April 1, 2002, apparently at counsel's request, the plaintiff was examined by certified clinical psychologist Ollie Dennis, Ed.D. Dr. Dennis administered an IQ test and interpreted the results as follows (AR, p. 618):

> Mrs. Bybee obtained a Verbal IQ within a range of 66 to 74, a Performance (nonverbal) IQ of 70 to 81, and a Prorated Full Scale IQ within a range of 66 to 73 (all within a confidence interval of 90%) ....

Notwithstanding the foregoing "wiggle room," Dr. Dennis further qualified that the "Results of the examination probably represented a low estimate of [the plaintiff's] current functional abilities due to resistance to guessing and evasiveness" and because her "exhibited moderate difficulty in reading and math skills ... was much greater than expected when compared to her obtained intellectual scores" (AR, p. 618). Despite all these reservations, in the end, Dr. Dennis diagnosed "mild mental retardation (provisional)" as opposed to borderline intellectual functioning (BIF) (AR, p. 621).

On April 26, 2007, the plaintiff was examined at the request of the Commissioner by licensed psychologist Craig Cabezas, Ph.D. Dr. Cabezas administered an IQ test, and the results were verbal IQ of 69, performance IQ of 70, and full-scale IQ of 67 (AR, p. 391). In somewhat of a mirror image of the opinion of Dr. Dennis, who questioned the validity of the IQ scores but nevertheless diagnosed mental retardation, Dr. Cabezas acknowledged that the "reported testing scores appeared to be reasonably valid and reflect her abilities on the Wechsler Adult Intelligence Scale" but was willing to diagnose only BIF (AR, pp. 391 and 393). The magistrate judge concludes that, in light of the inconclusive findings of Drs. Dennis and Cabezas, the plaintiff has failed to establish the presence of a valid IQ of 60 through 70.

In his written decision (AR, p. 18), the ALJ accepted Dr. Cabezas' diagnosis of BIF because, according to Dr. Cabezas (AR, p. 393):

> ... While testing results would suggest a diagnosis of mental retardation, borderline intellectual functioning has been made instead as a diagnosis due to the claimant's level of adaptive functioning. The claimant has been able to maintain a fairly steady history of gainful employment. She is able to complete daily living skills independently, reportedly including paying her own bills.

Like Dr. Cabezas, in finding a lack of deficits in adaptive functioning, the ALJ placed great weight upon the plaintiff's work history, and we have already concluded that the ALJ did not err in so doing. See Requirement 3, supra.

The magistrate judge concludes that the ALJ stated a substantial basis for finding that the plaintiff's cognitive impairment does not satisfy the criteria of Listing 12.05C, to-wit (AR, p. 18):

> Regarding the claimant's cognitive abilities, the evidence does support the claimant's testimony that she has reading difficulties. Testing in February 1972, a time when the claimant was 13 years of age, showed IQ of 63 as measured by the Peabody Picture Vocabulary Test. The undersigned has considered the cumulative IQ scores of record, but finds there are inconsistencies in this level of functioning as well as validity concerns given the indications of over reporting of symptoms

[in the reports of Drs. Cabezas and Dennis]. The claimant has a steady 10 year work history performing semi-skilled work. She manages her own finances. She has a driver's license and routinely drives. She independently performs a wide array of daily living tasks. She appears to be the primary caregiver to her young daughter. At the hearing, the claimant related appropriately to her representative and to the undersigned, and also tracked the questioning quite well and responded in a timely and coherent manner. In consideration of this level of adaptive functioning, the undersigned concludes the claimant's IQ does not satisfy 12.05C criteria.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).